ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ANDREW PAULSON (CABN 267095)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    andrew.paulson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:22-CR-00423-HSG |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date: May 24, 2023 |
| KAMAR FERGUSON, | Time: 2:00 p.m. |
| Defendant. | Court: Honorable Haywood S. Gilliam, Jr. |

## I. INTRODUCTION

Between at least July 2021 and May 2022, Kamar Ferguson trafficked dozens of firearms into the Bay Area from other states. He initially used the U.S. Postal Service to mail guns to his customers in California until one of those packages was intercepted. He then began driving the guns to the Bay Area and enlisted his friends, who were in need of money to feed their young children, to help obtain and transport the lethal weapons. On February 1, 2023, Ferguson pleaded guilty to one count of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A), one count of delivery to a carrier without written notice in violation of 18 U.S.C. § 922(e), and one count of mailing nonmailable firearms in violation of 18 U.S.C. § 1715. A fair and appropriate sentence in this case is 21 months' confinement and three years' supervised release.

## II. OFFENSE CONDUCT AND SENTENCING GUIDELINES CALCULATION

### A. Ferguson Trafficked in Large Quantities of Firearms

Between at least July 2021 and May 2022, Ferguson trafficked dozens of firearms from Texas and Arizona into California—all for a profit. At first, he used the U.S. Postal Service to mail firearms to individuals in the Bay Area. But after agents intercepted one of the packages he had mailed, which contained three complete firearm slides, one lower receiver, and three high-capacity magazines, Ferguson switched tactics, hoping to avoid detection and further damage to his bottom line. After that, he began driving guns to the Bay Area.

Ferguson did not act alone. In need of money to feed and clothe her children, Ferguson paid a female friend (K.W.) approximately $100 per gun to act as a straw purchaser in Arizona. In all, K.W. purchased eight Glock handguns and one Micro Draco AK-47 style pistol for Ferguson. Law enforcement fortunately intercepted some of these guns before they could reach Ferguson's customers in the Bay Area.

On March 17, 2022, California Highway Patrol Officers in Dublin stopped Ferguson's car. Ferguson's friend (E.B.) was driving, K.W. was in the front passenger seat, and Ferguson was in the rear passenger seat with a four-year-old child. During a search of the car, CHP officers found an empty black firearm holster in the center console, two black extended magazines in the trunk, and a dark gray duffel bag that was on the floor at Ferguson's feet. In the bag, CHP officers discovered 31 magazines, a 10mm Glock 29, a .357 Glock 32 Gen 4 pistol, and a Micro Draco 7.62X39 mm AK-47 style pistol.




1  When Ferguson got caught with these guns, he lied.  He told officers that the guns in his bag were not his,
2  that they were not registered to him, and that he did not know how they ended up in his bag.  But when
3  the officer pressed him on this patently false story, Ferguson changed his tune, stating that he was going
4  to take them to the range and shoot them, then return home.

5  On May 11, 2022, agents arrested Ferguson at his house in Arizona and subsequently searched his
6  cellphone pursuant to a search warrant.  That search revealed a multitude of conversations between
7  Ferguson and his firearm suppliers and customers that involved dozens of firearms.  A number of these
8  transactions involved assault weapons.  Below is a sample of the photos found on Ferguson's phones that
9  depict firearms that Ferguson negotiated to purchase and sell.




**B. The PSR Accurately Calculates the Offense Level**

The government agrees with the offense level as set forth in the Presentence Investigation Report (PSR).  PSR ¶¶ 24-34.  The PSR calculates the offense level as follows:

GOVERNMENT SENTENCING MEMO                 3
4:22-CR-00423-HSG

|   |   |   |   |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. §2K2.1(a)(7): | | 12 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2 | | |
|    | U.S.S.G. § 2K2.1(b)(1)(A) (8-24 firearms) | | +4 |
|    | U.S.S.G. § 2K2.1(b)(5) (defendant engaged in trafficking of firearms) | | +4 |
| c. | Acceptance of Responsibility under U.S.S.G. § 3E1.1: | | - 3 |
| d. | Total Offense Level: | | 15 |

### C. The PSR Accurately Calculates Ferguson's Criminal History

The government also agrees with the PSR's calculation of Ferguson's criminal history. *Id.* ¶¶ 35-40. Based on Ferguson's single conviction and the fact that he was on probation when he committed this offense, his criminal history score is 3, yielding a Criminal History Category (CHC) of II. *Id.* ¶ 40. The applicable Guidelines range for offense level 17 and CHC II is 27-33 months' imprisonment. *Id.* ¶ 69. The government also agrees with Probation's conclusion that even though the proposed amendments to the Guidelines would result in Ferguson's CHC being I instead of II, those amendments are not yet in effect. Addendum to PSR ¶ 5. As a result, the properly calculated CHC under the current Guidelines results in a CHC of II.

## III. SENTENCING RECOMMENDATION

### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

(4)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. The Government's Recommended Sentence of 21 Months is Sufficient but not Greater than Necessary

The seriousness of the offense, the history and characteristics of the defendant, and the need for specific and general deterrence all support a 21-month custodial sentence in this case. To begin with, the offense here is serious. Ferguson illegally sold a multitude of firearms to individuals in the Bay Area, and he did so for a profit. The danger posed to the community by illicit firearms sales is well-established, as the most dangerous people in our society can acquire firearms only from such illegal transactions. *See, e.g.*, *United States v. Torres*, 911 F.3d 1253, 1264 (9th Cir. 2019) (internal quotation marks omitted) (Congress passed Section 922(g) to "disarm groups whose members Congress believes are unable or unwilling to conduct themselves in conformity with the responsibilities of citizenship").

To maximize profit on his firearms trafficking, Ferguson appears to have used various methods, including armed robbery. According to police reports, in July 2021, Ferguson had arranged to purchase a firearm from an individual. PSR ¶ 42. Ferguson arrived at the transaction in a car driven by another man. The victim approached Ferguson's car and the two haggled over the price. Ferguson then asked to take possession of the gun from the victim. When he did, the man driving the car took a pistol from his waistband and pointed it at the victim, who put his hands up and backed away as Ferguson and the man drove off with the victim's gun.

In pursuit of profits, Ferguson also took advantage of his friends. K.W., who needed money to feed and clothe her young children, agreed to serve as a straw purchaser for Ferguson in exchange for approximately $100 per gun. PSR ¶ 15. He once again used K.W. and E.B. to help him transport these illegal firearms to the Bay Area from Arizona. And when he needed them no more, Ferguson literally kicked them to the curb. Through discovery provided in connection with this case, Ferguson learned that K.W. and E.B. had told federal agents about Ferguson's illicit firearms trafficking and how he had taken advantage of their poverty to further his illicit for-profit firearms sales. After discovering this, Ferguson was with E.B. and K.W. when he told them to "get the fuck out of the car," and then called them "snitches"

before driving off, leaving E.B. and K.W. stranded on the side of the road in California with no way to return home to Arizona (they had previously driven to California with Ferguson in his car).

Ferguson's intimidation of others did not stop with witnesses in this case. On February 12, 2023, Sheriff's Deputies in Arizona arrived on scene in a parking lot where Ferguson's girlfriend reported that he had hit her in the face and then fled the scene. Dkt. 35 at 1-2.[1] Her left cheek was stuck onto her braces, and she had blood in her mouth. *Id.* at 2. She then told Deputies that she and Ferguson had moved in together in an apartment in Arizona—an apartment that was not authorized by Pretrial Services (PTS). *Id.* Ferguson subsequently denied any involvement in the incident and claimed that he had been in the Bay Area when this occurred (PTS was unable to confirm). *Id.* Four days after the incident, the PTS officer spoke with Ferguson's girlfriend who now said that another man assaulted her and that she did not, in fact, live with Ferguson. *Id.*

This wasn't the only time someone changed their story to protect Ferguson. Between May and December 2022, PTS in Arizona attempted numerous times to confirm that Ferguson actually lived where he claimed. *Id.* at 3-4. During an initial visit to the Sober Living Environment where Ferguson purportedly lived with his daughter, PTS noticed that the residence was "sparsely furnished with mattresses against walls and no clothes for [Ferguson] or his minor daughter." *Id.* at 3. After multiple unsuccessful unannounced home visits where Ferguson was not there, the PTS officer conducted another home visit on December 14, 2022. *Id.* at 4. An unknown male residing at the house opened the door and informed the PTS officer that Ferguson did not live there. *Id.* A few hours later, and after speaking with Ferguson, the PTS officer returned and met Ferguson outside the residence. *Id.* This time, the unknown male who just a few hours earlier had told the PTS officer that Ferguson did not live there, recanted, stating that Ferguson did live there. *Id.*

Ferguson has pleaded guilty to serious charges in this case, and yet his response to these charges—attempting to intimidate key witnesses, having repeated law enforcement interactions while on pretrial release, and attempting to deceive PTS—shows that he does not fully appreciate the gravity of the situation and that he believes the rules do not apply to him. A Guidelines sentence would therefore be entirely

---

[1] A witness on scene provided Deputies video footage of the incident. At the time of this filing, the government has not obtained a copy of that footage.

appropriate in this case. But a Guidelines sentence would not fully account for Ferguson's story. His upbringing appears to have been quite challenging. It seems to have been marked by abuse, drug abuse, an unstable living situation, and poverty, to name a few challenges. None of these things excuse Ferguson's behavior in this case. But they cannot be ignored. The government's below-guidelines 21-month sentencing recommendation accounts not only for the serious nature of the crimes at issue and Ferguson's poor response to the charges in this case, but also for the complicated set of life experiences that has led Ferguson to this point.

### IV.  CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence Ferguson to 21 months' imprisonment, three years' supervised release, and a $300 special assessment.

DATED: May 17, 2023                                  Respectfully submitted,

                                                     ISMAIL J. RAMSEY
                                                     United States Attorney


                                                     */s/ Andrew Paulson*
                                                     ANDREW PAULSON
                                                     Assistant United States Attorney